1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN BULLINGTON, | CASE NO. 11cv2459-LAB (JMA) |
| Plaintiff, | **ORDER ADOPTING REPORT AND RECOMMENDATION; AND** |
| vs. | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT; AND** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **ORDER REMANDING CASE TO ADMINISTRATIVE LAW JUDGE** |
| Defendant. | |

After being found to suffer from fibromyalgia and various other ailments, Plaintiff Karen Bullington was denied social security disability benefits. She appealed from the denial. This matter was referred to Magistrate Judge Jan Adler for a report and recommendation, pursuant to 28 U.S.C. § 636(b). The parties filed cross motions for summary judgment, and on February 28, 2013, Judge Adler issued his report and recommendation (the "R&R"). The R&R recommended a determination that the administrative law judge (ALJ) did not err by failing to mention specifically Bullington's interstitial cystitis, and in her review of Dr. Manorma Reddy's opinions. The R&R found, however, that the ALJ did not satisfy her duty when rejecting the opinions of Bullington's treating physicians, improperly rejected psychologist Dr. Balson's opinion, and improperly rejected Bullington's subjective symptom testimony.

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  *Id*.  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). At the same time, the Court is not bound by the R&R, but may accept, reject, or modify it. *See* § 636(b)(1); *Baldin v. Wells Fargo Bank, N.A.*, 2013 WL 796712, slip op. at *1 (D.Or., March 4, 2013) ("While the level of scrutiny under which I am required to review the [magistrate judge's findings and recommendations] depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the [findings and recommendations].")

Plaintiff filed no objections, but Defendant filed specific written objections. Defendant's objections address the R&R's finding of error as to the ALJ's consideration of the opinions of Drs. Riley and Schulman, the finding of error as to the ALJ's consideration of Dr. Balson's opinion, and the finding of error as to the ALJ's credibility finding.

**Discussion of Defendant's Objections**

### Opinions of Drs. Riley and Schulman

Both Dr. Riley and Dr. Schulman are treating physicians.  Defendant objects that the ALJ appropriately gave little weight to Dr. Schulman's assessment of Bullington's physical limitations because, Defendant argues, Dr. Schulman's assessment was inconsistent with other evidence in the record, including expert testimony, it was prepared for the purpose of assisting Bullington with disability benefits, and because it was inconsistent with the record as a whole, including Dr. Schulman's own treatment records.

A treating physician's opinion is usually entitled to a good deal of deference. Under 20 C.F.R. § 404.1527(d)(2) and 416.92(d)(2), the Commissioner must give a treating physician's opinion controlling weight, if it is well-supported by medically acceptable

1  techniques and not inconsistent with substantial evidence in the record. Even when a

2  treating physician's opinion is not given controlling weight, it is still entitled to deference. *See*

3  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Some of the reasons the ALJ has identified

4  as reasons to discount Dr. Schulman's opinion are impermissible, and taken together they

5  do not meet the required standard.

6          Where, as here, the opinion of a non-treating physician is based on clinical findings

7  also considered by the treating physician, the ALJ may reject the treating physician only if

8  she gives "specific, legitimate reasons for doing so that are based on substantial evidence

9  in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations omitted).

10  Under these circumstances, the opinion of the non-treating physician is not "substantial

11  evidence." *Id.* (holding that the opinion of a non-treating physician can be considered

12  substantial evidence if that physician's opinion "is based on independent clinical findings that

13  differ from those of the treating physician"). The non-treating expert's disagreement is not

14  itself substantial evidence, and the ALJ should not have considered it as one of the reasons

15  to reject Dr. Schulman's opinion.

16          The ALJ also considered the fact that Dr. Schulman offered her opinion as part of a

17  disability benefits application, apparently imputing bias to Dr. Schulman. In the absence of

18  some evidence that Dr. Schulman was shaping her opinion to help her patient, or in some

19  other way acting improperly, this was error. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.

20  1995) (quoting *Ratto v. Sec'y, Dept. of Health & Human Servs.*, 839 F. Supp. 1415, 1426

21  (D.Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help their

22  patients collect disability benefits."); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)

23  (holding that the source of an opinion is a factor justifying the opinion's rejection only if there

24  is evidence of actual impropriety or no medical basis for opinion); *Reddick v. Chater*, 157

25  F.3d 715, 725–26 (9th Cir. 1998) (holding that ALJ erred in assuming that the treating

26  physician's opinion was less credible because the physician acknowledged it was his job to

27  be supportive of his patient).

28  / / /

1    The Court has reviewed the portions of the record the ALJ and Defendant cite to as
2    contradicting or undercutting Dr. Schulman's opinion, and they do not show what the ALJ
3    apparently concluded they did. While Dr. Schulman's progress notes record that drugs and
4    other treatments brought about some improvement, the ALJ improperly concluded from this
5    that Bullington was not experiencing any significant symptoms at all. In fact, Dr. Schulman's
6    progress notes, even when they point out improvement, record continuing symptoms that
7    support Dr. Schulman's conclusion. Fibromyalgia has a number of symptoms, including
8    "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of
9    sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this
10   disease." (R&R at 2 n.1.) While medication and other treatments reduced some of
11   Bullington's symptoms some of the time, her fibromyalgia was not "well controlled."

12   Defendant cites the administrative record (AR) at, 323, 325, and 327 as showing that
13   "medications and trigger point injections were effective in controlling her fibromyalgia and
14   pain." In fact, the first two merely record improvement or pain reduction, while making clear
15   Bullington was still suffering pain and other symptoms of fibromyalgia. Dr. Schulman's notes
16   from October 17, 2006 (AR 323) mention either "some improvement" or "some significant
17   improvement" of some symptoms, but also mention continuing problems with "terrible
18   headaches," "severe neck pain," and "significant generalized fatigue, which has most
19   recently worsened." Later in the notes from that same date (AR 325), Dr. Schulman
20   mentioned Bullington had experienced "some relief" due to trigger point injections, but also
21   "muscle pain symptoms and muscle spasms around her neck," which would be treated on
22   a trial basis with medication, and continuing insomnia. Dr. Schulman's notes from January
23   4, 2007 (AR 327) mention "significant gains in her overall function ability" including
24   "increased range of motion, decreased stiffness in the area of the neck . . . increased
25   functional activity, including walking and ADLs . . . ." But they make clear these
26   improvements do not represent a recovery; these same notes say Bullington's functional
27   status needs significant improvement, her sleep is difficult, and although she is "less flaring,"
28   her pain is still a 6 on a scale of 1 to 10.

The ALJ cited some additional pages of notes (AR 23), but these fare no better. On June 19, 2007 (AR 342–43), Dr. Schulman noted that treatment provided Bullington with "symptom relief . . . for a period of time," but also mentioned sleep problems, a lack of alertness during the day, tenderness of 12 of 18 trigger points, and the fact that Bullington was "hoping to return to a more functional status on a day-to-day basis." On September 11, 2007 (AR 358), Dr. Schulman noted Bullington's report that medication was "helpful" and her reported pain level was between 4 and 6 out of 10. The same notes mention generalized joint pain, as well as hip pain that worsens with sitting and sometimes when beginning to walk.

On October 1, 2007 (AR 374), Dr. Bonakdar's[1] notes show that Bullington "continued to have improvement" on medication and that trigger point injections "reduced pain for approximately 5 to 6 days." These same notes mention Bullington's reported pain level in her back and neck as a 6 or 6.5 out of 10, and also continued fatigue.  On February 22, 2008 (AR 819), Dr. Bonakdar's notes report that Bullington's pain was flaring, "but is stabilizing now." Although it had improved recently, she described it at 4 out of 10.  On March 10, 2008 (AR 815), Dr. Bonakdar's notes say Bullington reported her oral pain as "stable at 3 out of 10," because of medications and treatments. It says nothing about the level of pain in other areas, except to mention that Bullington experienced increasing pain at certain times.

On April 14, 2009, Dr. Schulman again saw Bullington. Her notes (AR 935) reflect that physical therapy was helping Bullington's right elbow, though her left elbow was developing similar symptoms as the right one, and she was seeking treatment for that as well. While medication helped some of Bullington's symptoms, it was discontinued because it caused gastrointestinal upset.  The notes also report foot pain, and 14 of 18 tender points.

The various notes also mention that activity modification has been part of Bullington's treatment. It isn't explained what this means, but it is consistent with Dr. Schulman's and Dr. Riley's opinions concerning Bullington's functional limitations.  They also show fluctuation

---

[1] Dr. Bonakdar was also a treating physician. The R&R discusses Dr. Bonakdar's treatment of Bullington, and his notes. (R&R, 5:26–6:18.)

in Bullington's condition and recurrence of symptoms, not stability over time. At various points Bullington's record shows periodic improvement, improved prognosis, or temporary relief of pain, but the portions the ALJ cited do not show her condition had stabilized to the degree that the ALJ apparently concluded it had.  The ALJ therefore cited no reason supported by substantial evidence why Dr. Schulman's and Dr. Riley's opinions were unsupported by the record.

Defendant also objects that the ALJ did properly consider the factors set forth in 20 C.F.R. § 404.1527(c). These include the examining relationship, the treatment relationship, evidence supporting an opinion, consistency, specialization, and other factors. At least two of these factors weren't considered at all, however, the examining and treating relationship. Other than identifying certain office visits to Dr. Schulman (AR 21) and citing to Dr. Schulman's notes as described above, there is no indication in the ALJ's decision of how long Dr. Schulman's examining and treating relationship with Bullington lasted, or how many times Dr. Schulman examined or treated her. The ALJ's decision doesn't acknowledge Dr. Riley's examining and treating relationship with Bullington at all, even though the record shows Dr. Riley was Bullington's primary care physician. Instead, the ALJ expressly based her rejection of these two doctors' opinions on their supposed conflict with the record, the supposed lack of support for Dr. Schulman's opinion, Dr. Schulman's supposed bias (which, as noted, the Court rejects as an acceptable factor), and the fact that the expert Dr. Plotz disagreed with them. The ALJ never explained why the treating relationship or the examining relationship of either of these doctors didn't make their opinions more likely to be correct, as 20 C.F.R. § 404.1527(c)(1)–(2) says she should have done.

Defendant objected that the R&R erroneously attributed some treatment notes (AR 910) to Dr. Schulman that were actually made by Nurse Practitioner Deborah Stapel. Defendant, citing 20 C.F.R. § 404.1513, argues a nurse practitioner is not an acceptable medical source. While the notes were made by Nurse Practitioner Stapel, a nurse practitioner is an acceptable source. See § 404.1513(d)(1). To the extent a nurse practitioner works closely with, and under the supervision of a physician, her opinion must be considered

1  that of an "acceptable medical source." *Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d

2  1228, 1234 (9th Cir. 2011).

3       This leaves Dr. Plotz's disagreement as the sole basis for rejecting the treating

4  physician's opinions. The opinion of a non-examining expert, by itself, is insufficient as a

5  matter of law to support such a conclusion.  20 C.F.R. § 404.1527(c) and (e); *Tonapetyan*

6  *v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).   In short, the ALJ did not give valid reasons

7  for rejecting the opinions of the treating physicians in favor of the opinion of the non-treating

8  expert Dr. Plotz. This objection is **OVERRULED**.

9       **Dr. Balson's Opinion**

10      Dr. Balson, a state agency psychologist, offered an opinion that Bullington suffered

11 a mental impairment, a conclusion the ALJ afforded little weight. (AR 25.)   Defendant

12 concedes that the ALJ was required to consider Dr. Balson's opinion and explain the weight

13 she gave his opinion, but argues that the ALJ validly did this. Defendant takes issue with the

14 R&R, however, in its conclusion that Dr. Balson was an examining physician. The Court

15 agrees the record shows Dr. Balson did not examine or treat Bullington.

16      That said, the ALJ's consideration of Dr. Balson's opinion is inexplicable. The ALJ

17 cited several factors, including the fact that Dr. Balson had based his opinion on "a thorough

18 review of the evidence" and the fact that he was familiar with Social Security rules and

19 regulations. The ALJ then concluded:

20            Although the state agency consultant opined that the claimant had a severe
             mental impairment, the claimant's medical condition indicates it does not
21            rise to the level of severe.  The undersigned gives this opinion little weight.

22 (AR 25.) It is unclear what the first sentence means, and why it supports the ALJ's decision

23 to give Dr. Balson's opinion "little weight." Taking this remark literally, the ALJ thought that

24 Bullington's medical condition (fibromyalgia) undercut Dr. Balson's opinion that she had a

25 severe mental impairment; but that makes no sense. It may be that the ALJ thought

26 Bullington's medical records somehow showed she was not severely mentally impaired.  It

27 may also be that the ALJ thought the evidence didn't support the conclusion. But if the ALJ

28 thought either of those things, she did not say so.

1   Other than this remark, there is nothing to explain why the ALJ gave little weight to

2   Dr. Balson's opinion. As the R&R points out, Dr. Balson's opinion is consistent with that

3   offered by Dr. Plotz (R&R, 27:3–8; AR 43–44), whose opinion the ALJ found compelling.

4   The Court may not base its decision on "post hoc rationalizations that attempt to intuit

5   what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

6   1219, 1225 (9th Cir. 2009). The ALJ's failure to explain adequately why she was rejecting Dr.

7   Balson's opinion also requires remand.

8   This objection is therefore **SUSTAINED IN PART AND OVERRULED IN PART**. The

9   objection is sustained to the extent it points out Dr. Balson was not an examining or treating

10   source, but is overruled in other respects. The R&R is modified to include the explanation

11   and additional reasons set forth in this section.

12   **ALJ's Finding that Bullington's Testimony Was Not Fully Credible**

13   Defendant objects that the ALJ adequately explained her reasons for finding

14   Bullington's own testimony not fully credible.

15   The essence of this objection pertains to Bullington's own statements, as

16   memorialized in the medical record, which the ALJ took as indications that Bullington was

17   actually functioning well and able to work. Some of these do not at all support such a

18   conclusion. For example, the ALJ relied on Bullington's statement that she hoped to return

19   to work as evidence that in fact she could work. Bullington's expressing a desire, wish, or

20   hope to return to work, however, doesn't show that she could work.

21   The ALJ concluded that Bullington leading an "active life" based on the fact that she

22   was not homebound, could engage in some recreation, and was able to do some housework

23   and care for herself. (AR 23 (citing AR 184–85).)  As the R&R correctly points out, Bullington

24   never said she could do housework on a daily basis or even very regularly; in fact, she said

25   she lives with a roommate who takes care of most of the housework. (R&R at 9:26–28; *see*

26   *also* AR 57–58 (Bullington's testimony regarding limited household tasks she could

27   perform).) A correct summary of the record would have pointed out that Bullington qualified

28   her self-reported activity level, by repeatedly mentioning that her symptoms or the side

effects of her medications often prevented from engaging in activities, that she could accomplish some tasks only with assistance, and that many of the activities she could engage in were simplified. (AR 183–86.)  By way of example, the ALJ supported her conclusion that Bullington was leading an "active life" by mentioning that her activities included "preparing meals." (AR 23.)  In fact, Bullington said "I do not cook anymore . . . ;" she said she reheated a frozen meal for herself once a day, and ate cereal or toast for breakfast. (AR 183.)  Her roommate brought or made other meals. (*Id*.) The R&R correctly found that the ALJ's proffered reasons for discrediting Bullington's subjective symptom testimony were not supported by substantial evidence. (R&R, 30:19–22.) On remand, the ALJ will be required to reconsider Bullington's credibility.

Defendant objects that the record supports a finding that Bullington was responding well to conservative treatment, and that Bullington's testimony can be discredited for this reason. The cited portion of the ALJ's opinion, however (AR 23–24) doesn't conclude that the treatment was conservative. The opinion mentions trigger point injections, stretching and exercises, and medications, but doesn't say whether these are considered conservative.  It omits other treatments mentioned in the progress notes, which suggests that the opinion was intended only as an overview and not a review of the treatment regimen. The opinion does express skepticism at the degree of pain Bullington reports, pointing out she has been prescribed Vicodin rather than morphine, methadone, Fentanyl, or Oxycontin, which the ALJ thinks would be prescribed for stronger pain. But if the ALJ was relying on the Bullington's being treated conservatively, she didn't say so. *See Hernandez v. Colvin*, 2013 WL 655261, slip op. at *5 (C.D.Cal., Feb. 22, 2013) (rejecting ALJ's conclusion that claimant was receiving "conservative treatment," where ALJ didn't cite evidence to support this conclusion, and where claimant's treatment included Tylenol #3 and/or Vicodin).

**Dr. Reddy's Opinion**

The cross motions for summary judgment disputed what Dr. Reddy's opinion concerning Bullington's capacity meant. Dr. Reddy's opinion was that Bullington is able to sit, stand, and walk six hours cumulatively in an eight-hour day taking 10–15 minutes break

every two hours." (AR 598.) Bullington argued that this meant Dr. Reddy's opinion was that she could sit, stand, and walk for a combined total of six hours in an eight-hour day; this would mean she was unable to engage in full-time employment. The R&R determined that the ALJ must have determined Dr. Reddy meant that Bullington could sit, stand, and walk for a cumulative amount of six hours for each activity, and that because Dr. Reddy's opinion was ambiguous, the ALJ's interpretation was entitled to deference. (R&R, 24:23–27.)

The ALJ didn't expressly determine what Dr. Reddy's opinion meant, or discuss her reasons for assuming Dr. Reddy was referring to a total of six hours for each activity. This is therefore not a case where the ALJ resolved an ambiguity in the evidence, as the R&R assumes, but a case where the ALJ didn't notice it and therefore didn't address it. *Compare Payden v. Astrue*, 2010 WL 5392613, at *5–*6 (D.Kan., Dec. 21, 2010) (where ALJ did not seem to notice ambiguity and did not address it in the decision, remanding to commissioner for clarification). On remand, the ALJ should resolve the ambiguity.

**Conclusion and Order**

With the exceptions set forth above, Defendant's objections to the R&R are **OVERRULED**. The R&R, as modified above, is **ADOPTED**. Plaintiff's motion for summary judgment is **GRANTED**, and Defendant's cross-motion for summary judgment is **DENIED**. All other pending motions are **DENIED AS MOOT** and all pending dates are **VACATED**. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED:  March 19, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge